IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DAVID A. YARBROUGH,                           )
                                              )
                        Petitioner,           )
                                              )
        v.                                    )        Case No. 21-3196-JWL
                                              )
DON LANGFORD, Warden,                         )
Ellsworth Correctional Facility,             )
                                              )
                        Respondent.           )
                                              )
_____)

## MEMORANDUM AND ORDER

This matter comes before the Court on David Yarbrough's *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. # 1).  For the reasons set forth below, the Court **denies** the petition.

## I.      Background

In 2011, in the District Court of Wyandotte County, Kansas, a jury convicted petitioner of three counts of rape, four counts of aggravated indecent liberties with a child, and eight counts of aggravated criminal sodomy, relating to petitioner's alleged molestation of his wife's granddaughter, who was under 14 years of age at the time. Petitioner received a life sentence on each count, with parole eligibility only after a mandatory 25 years, with two counts running consecutively and the remaining counts running concurrently.  The Kansas Court of Appeals affirmed petitioner's convictions and

sentence, the Kansas Supreme Court denied review, and the United States Supreme Court denied certiorari.  *See State v. Yarbrough*, 2013 WL 3791793 (Kan. Ct. App. July 19, 2013) (unpub. op.), *rev. denied* (Kan. Feb. 18, 2014), *cert. denied*, 574 U.S. 836 (2014).

Petitioner subsequently filed multiple motions for state habeas relief under K.S.A. § 60-1507, both *pro se* and through appointed counsel, but after an evidentiary hearing, the state district court denied petitioner's claims.  The Kansas Court of Appeals affirmed that denial, and the Kansas Supreme Court again denied review.  *See Yarbrough v. State*, 2020 WL 5740891 (Kan. Ct. App. Sept. 25, 2020) (unpub. op.), *rev. denied* (Kan. Aug. 10, 2021).

On August 27, 2021, petitioner filed his petition in this Court pursuant to Section 2254, in which petitioner asserted six grounds for relief.  On September 1, 2021, the Court ordered petitioner to show cause why four of his claims (Grounds Two, Three, Four, and Five) should not be dismissed for failure to exhaust state court remedies with respect to those claims.  Although he requested and was granted two extensions of time for his response to the show-cause order, petitioner ultimately failed to file any response. Accordingly, by Memorandum and Order of December 8, 2021, the Court dismissed the four claims.[1]  The Court further ordered the State to respond to the remaining claims

---

[1] With respect to each of these claims, petitioner either failed to assert the claim in state court or failed to appeal the district court's denial of the claim.  Thus, petitioner has failed to exhaust his state court remedies with respect to these claims, as required by 28 U.S.C. § 2254(b) and (c).  In the Kansas courts, an issue not raised on appeal is deemed abandoned.  *See State v. Edwards*, 260 Kan. 95, 98 (1996).  If a state prisoner has failed to exhaust or has procedurally defaulted a claim by failing to raise it in the state courts, the claim may be raised in the federal habeas court only if the prisoner can demonstrate cause Continued…

(Grounds One and Six), with petitioner's reply brief due 30 days after receipt of the State's response.  On April 1, 2022, the State filed and mailed to petitioner its response, but petitioner has not filed any reply brief in support of his petition.[2]

## II.   <u>Governing Standards</u>

Section 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides for consideration of a prisoner's writ of habeas corpus on the ground that "he is in custody in violation of the Constitution or laws or treaties of the United States."  *See* 28 U.S.C. § 2254(a).  The petitioner must exhaust state court remedies.  *See id.* § 2254(b), (c).  Relief shall not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  *See id.* § 2254(d).  The standard is very strict, as explained by the Tenth Circuit:

> The [state court] rejected this claim on the merits.  Our review is therefore governed by the AEDPA, which erects a formidable barrier to federal habeas

---

for the failure and actual prejudice from the constitutional violation; or that the prisoner is actually innocent.  *See Bousley v. United States*, 523 U.S. 614, 622-23 (1998).  Petitioner did not respond to the show-cause order, and thus petitioner failed to establish the necessary cause and prejudice or his actual innocence as required for this Court's consideration of these claims.

[2] This case was reassigned to the undersigned judge on May 10, 2022.

relief and requires federal courts to give significant deference to state court decisions on the merits.

. . .

Clearly established law is determined by the United States Supreme Court, and refers to the Court's holdings, as opposed to the dicta. A state court decision is "contrary to" the Supreme Court's clearly established precedent if the state court applies a rule different from the governing law set forth in Supreme Court cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.

A state court decision is an "unreasonable application" of Supreme Court precedent if the state court identifies the correct governing legal rule from the Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule – like the one adopted in *Strickland* – the more leeway state courts have in reaching outcomes in case-by-case determinations. An *unreasonable* application of federal law is therefore different from an *incorrect* application of federal law.

We may issue the writ only when the petitioner shows there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with the Supreme Court's precedents. Thus, even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. If this standard is difficult to meet – and it is – that is because it was meant to be. Indeed, AEDPA stops just short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. Accordingly, we will not likely conclude that a State's criminal justice system has experienced the extreme malfunction for which federal habeas relief is the remedy.

*See Frost v. Pryor*, 749 F.3d 1212, 1222-24 (10th Cir. 2014) (emphasis in original) (internal quotations and citations and footnote omitted).

In this case, the petition includes claims that petitioner's representation by his trial counsel was constitutionally deficient. Petitioner's claims of ineffective assistance of counsel are governed by the deferential two-pronged standard set forth by the Supreme

Court in *Strickland v. Washington*, 466 U.S. 668 (1984).  Under that standard, "[t]o establish ineffective assistance of counsel, [a] [d]efendant must show 'that counsel's representation fell below an objective standard of reasonableness' and that he was prejudiced by the deficient performance." *See United States v. Moya*, 676 F.3d 1211, 1213 (10th Cir. 2012) (quoting *Strickland*, 466 U.S. at 687-88, 692).  The test for establishing prejudice is as follows:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*See Strickland*, 466 U.S. at 694.

> Surmounting *Strickland*'s high bar is never an easy task.  An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve.  Even under *de novo* review, the standard for judging counsel's representation is a most deferential one.  Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge.  It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence.  The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

*See Harrington v. Richter*, 562 U.S. 86, 105 (2011) (internal quotations and citations omitted).

The Court's review under the AEDPA of a state court's application of *Strickland* is even more deferential:

Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*See id.* (internal quotations and citations omitted).

### III.   **Analysis**

The Court addresses petitioner's two remaining claims, asserted in Ground One and Ground Six of the petition. For Ground One, petitioner states various claims as follows:

Prosecutor committed misconduct during voir dire and the district court erred in denying his motion for a mistrial based on prejudice in the Jury Pool. The district court erred in denying petitioner's motion for new trial based on ineffective assistance of counsel. Also, District Court denied petitioner's motion for a downward dispositional departure and erred in sentencing him to life imprisonment with parole eligibility after a mandatory minimum of 25 yrs rather than a mandatory minimum of 20 years, which violated his U.S. Constitutional Rights and Due Process Rights.

For Ground Six, petitioner states the following claim: "Petitioner's incompetency claim was denied by state courts which violated his United States Constitutional and Due Process Rights." Petitioner has stated these claims only conclusorily, however, with no supporting argument, and as noted above, he has filed no reply brief. The Court concludes that petitioner has not demonstrated that he is entitled to relief on any of his claims, and it therefore denies the petition in its entirety.

A.     _Prosecutorial Misconduct in Voir Dire_

In Ground One, petitioner first claims prosecutorial misconduct during voir dire. "[A] prosecutor's improper comments will be held to violate the Constitution only if they so infected the trial with unfairness as to make the resulting conviction a denial of due process." *See Parker v. Matthews*, 567 U.S. 37, 45 (2012) (internal quotations and citations omitted).

In his petition, petitioner does not explain how the prosecutor committed misconduct during voir dire. On direct appeal, the court of appeals rejected petitioner's claim that the prosecutor committed misconduct in asking questions of a potential juror who had known someone falsely accused by a child of sexual abuse. *See Yarbrough*, 2013 WL 3791793, at *6-7. The court of appeals concluded that the prosecutor's questions had not been improper, as the questions came within the context of a colloquy attempting to determine the potential juror's bias; the questions were mitigated by the "the prosecutor's repeated reminders throughout the course of voir dire that the defendant was presumed innocent, the burden of proof was on the State to prove the defendant guilty beyond a reasonable doubt, and the jury's job was to make a decision based solely on the evidence presented at trial;" the trial court instructed the jury on the presumption of innocence and the burden of proof prior to the presentation of evidence; and petitioner failed to object at trial to the line of questions. *See id.* The court of appeals further held that even if the questioning could be considered improper, petitioner was not denied a fair trial. *See id.* at *7.

Thus, petitioner's claim was thoroughly considered and rejected by the state court, and petitioner has not offered any argument as to why that decision was unreasonable. The Court concludes that the state court's holding that the prosecutor did not commit misconduct and that petitioner was not denied a fair trial does not represent an unreasonable application of federal law or an unreasonable determination of the facts. Accordingly, the Court denies this claim for relief.

### B.    *Mistrial Because of Bias in the Jury Pool*

Petitioner next claims in Ground One that the trial court erred in denying his motion for a mistrial based on prejudice to the jury pool, although he does not explain that claim further in the petition. On direct appeal, the state court of appeals rejected petitioner's argument that the jury pool was prejudiced by the number of potential jurors who stated that they could not be impartial based on the number and nature of the counts against petitioner. *See id.* at *7-8. The court noted that "throughout the series of questions related to the potential jurors' ability to remain impartial despite the number and nature of the charges against [petitioner], the prosecutor repeatedly reminded the potential jurors that they were charged with making a decision based solely on the evidence." *See id.* at *8.

Petitioner has not indicated how the states court erred in rejecting this claim, and the Court concludes that the state court did not act unreasonably in doing so. The Court therefore denies this claim.

### C.    *Ineffective Assistance of Trial Counsel*

In Ground One, petitioner asserts a claim for ineffective assistance of counsel. The Kansas Court of Appeals rejected this claim on direct appeal. *See id.* at *12-14. Petitioner

8

first claimed that his trial counsel's performance was deficient because he failed to obtain a psychological evaluation of the victim or investigate the victim's personal, social, and mental health background. *See id.* at *12. After an evidentiary hearing, the district court found that counsel had conducted a limited investigation and had discovered nothing to warrant further inquiry, and it concluded that counsel's performance was therefore not deficient; and the court of appeals concluded that substantial competent evidence supported those rulings. *See id.* at *13. The court of appeals further concluded that petitioner had failed to show the requisite prejudice because he failed to show that further investigation would have revealed favorable information. *See id.*

Thus, the state courts applied the applicable two-pronged test, and under the doubly deferential standard that guides this Court's analysis, the Court must conclude that those courts' application of the test was not unreasonable. In particular, the Court notes that petitioner cannot establish the requisite prejudice here because he has not pointed to evidence that would have been revealed by further investigation by trial counsel. The Court thus denies this claim of ineffective assistance of counsel.

The state courts also rejected petitioner's claim that trial counsel should have called a medical professional who examined the victim to testify that the victim showed no signs of sexual abuse. *See id.* at *13-14. The court of appeals upheld the district court's determination that counsel had not acted unreasonably with respect to this issue of trial strategy, in light of (a) the fact that six months had passed, and thus normal test results would have been expected; and (b) the defense expert's own admissions at the posttrial hearing that normal results do not exclude the possibility of abuse and that the prevalence

of normal exam results in children who have in fact been sexually abused would have been admissible at trial. *See id.* Again, the state courts thoroughly addressed the claim, their decisions were not unreasonable, and this Court must therefore defer to those rulings and deny petitioner's present claim of ineffective assistance of counsel.

D.   *Sentencing Issues*

On direct appeal, the state court of appeals rejected the two sentencing issues raised by petitioner in Ground One of his petition. *See id.* at *14-15. Petitioner appears to assert that his sentencing violated his Constitutional rights, but he has not explained how his sentencing implicated any issue of federal law. To the extent that petitioner claims a violation of state law, the Court denies the claims, as a state court's interpretation of state law is binding on a federal habeas court. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). To the extent that petitioner is attempting to raise an issue of federal law, such claims have not been exhausted in the state courts, as on appeal petitioner argued these sentencing issues only under Kansas law. Accordingly, the Court denies these claims for relief.

E.   *Incompetency Claim*

Finally, in Ground Six petitioner contends that the state courts erred in rejecting his incompetency claim. In his state habeas proceedings, the state courts rejected both petitioner's procedural claim that the trial court should have conducted a competency hearing and his substantive claim that he was incompetent at the time of trial. *See Yarbrough*, 2020 WL 5740891, at *3-8. The Court applies the following standards in reviewing those claims:

To make out a procedural competency claim, a defendant must demonstrate that a reasonable judge should have had a bona fide doubt as to the defendant's competence at the time of trial, but the claim does not require proof of actual incompetency.  Further, procedural competency imposes on the trial court a continuing duty to monitor the defendant's behavior.

A substantive competency claim, on the other hand, requires the higher standard of *proof of incompetency* by a preponderance of the evidence.  A petitioner alleging a substantive claim must demonstrate that he actually lacked a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and a rational as well as a factual understanding of the proceedings against him.  Thus, a petitioner alleging a substantive competency claim must show that he was convicted during a period of incompetency, whereas a procedural competency petitioner states a procedural competency claim by alleging the trial court failed to hold a competency hearing after the defendant's mental competency was put in issue.

*See Grant v. Royal*, 886 F.3d 874, 892-93 (10th Cir. 2018) (emphasis in original) (internal quotations and citations omitted).

The court of appeals held that the district court had not erred in failing to hold a competency hearing because petitioner had not raised the issue during trial and nothing at that time gave the district court reason to believe that petitioner was incompetent.  *See id.* at *4-5.  The court of appeals also upheld the district court's finding that petitioner had failed to show that he was legally incompetent at the time of trial.  *See id.* at *5-7.  The court noted that although an expert witness had testified that petitioner had a low IQ, such a fact does not necessarily equate with an inability to understand the proceedings, and the expert had testified that she could not offer an opinion on petitioner's legal competence or incompetence.  *See id.*at *5.  The court of appeals also noted, as did the district court, that petitioner had failed to offer any evidence from his trial counsel concerning the issue of his

competency at the time of trial. *See id.* Finally, the court reviewed petitioner's testimony at trial and his conduct during posttrial proceedings, concluding as follows:

> Nothing in [petitioner's] acts or statements during or after the trial shows that he suffered from any sort of mental incapacity or problem that affected his ability to make decisions, to understand their consequences, or to assist in his defense. The record does not reflect any concern expressed by [petitioner] or anyone else at trial that he may be incompetent. And [petitioner's] acts and statements do not suggest that he was unable to understand the nature and purpose of the proceedings or assist in his defense. Instead, the record shows that throughout the proceedings [petitioner] was actively engaged, showed no confusion about what was happening, and assisted in his defense.
>
> [Petitioner] thus showed no reason for anyone to doubt his competency at the time of trial.

*See id.* at *7.

Again, petitioner has not suggested any way in which the state courts' decisions were unreasonable. The state court of appeals undertook a thorough review of the record, and it reasonably concluded that petitioner failed to establish his incompetency at the time of trial and that the district court had had no basis to order a competency hearing. In particular, the state courts' rulings are supported by the facts that petitioner had offered no evidence of his incompetency at the time of trial and that his own expert could not opine that petitioner was in fact legally incompetent. Nor has petitioner submitted any additional evidence with his petition. The Court therefore denies this claim for relief.[3]

---

[3] The court of appeals also rejected petitioner's claim that his trial counsel had rendered ineffective assistance by failing to raise the issue of his competency. *See id.* at *7-8. To the extent petitioner asserts such a claim here, the claim is denied, as the state courts reasonably determined that there had been no basis to question petitioner's competency, and petitioner cannot establish the requisite prejudice in the absence of evidence that he was in fact incompetent.

## IV.   <u>Certificate of Appealability</u>

Rule 11 of the Rules Governing Section 2254 Cases states that the Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.[4] "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To satisfy this standard, a petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *See Saiz v. Ortiz*, 392 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting *Tennard v. Dretke*, 542 U.S. 274, 282 (2004)).  Because it is clear that petitioner is not entitled to relief on his habeas petition, the Court denies a certificate of appealability in this case.

IT IS THEREFORE ORDERED BY THE COURT THAT the petition for relief pursuant to 28 U.S.C. § 2254 is hereby **denied**.

IT IS SO ORDERED.

Dated this 1st day of June 1, 2022, in Kansas City, Kansas.

<u>s/ John W. Lungstrum</u>
John W. Lungstrum
United States District Judge

---

[4]  The denial of a Section 2254 petition is not appealable unless a circuit justice or a circuit or district judge issues a certificate of appealability.  *See* Fed. R. App. P. 22(b)(1); 28 U.S.C. § 2253(c)(1).